UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION



Written Opinion
Under the E-Government Act and Judicial Conference policy

| | |
|---|---|
| TERRY LEE GAROUTTE,    )<br>                              )<br>         Appellant,     )<br>                              )<br>     v.                      )   CASE NO. 3:08-cv-0083-DFH-WGH<br>                              )<br>DAMAX, INC.,            )<br>                              )<br>         Appellee.      )  | |

### ENTRY ON BANKRUPTCY APPEAL

A final judgment of an Indiana state court found that debtor Terry Lee Garoutte had engaged in criminal conversion against creditor Damax, Inc. When Garoutte sought bankruptcy protection, Chief Bankruptcy Judge Lorch granted summary judgment in favor of Damax, holding that the debt for criminal conversion is not dischargeable in bankruptcy because the state court's judgment amounted to a conclusive finding that Garoutte had inflicted "willful and malicious injury . . . to another entity or to the property of another entity." *In re Garoutte*, 2008 WL 2246908 (Bankr. S.D. Ind. May 28, 2008), applying 11 U.S.C. § 523(a)(6). Garoutte has appealed, arguing that collateral estoppel should not preclude him from challenging the non-dischargeability of the debt. For the reasons discussed below, the bankruptcy court's grant of summary judgment is vacated.

*Facts*

The history behind the state court judgment is laid out in detail in the Indiana Court of Appeals' opinion in the case. See *Hawkeye Charter Serv., Inc., v. Damax, Inc.*, 2008 WL 2080947 (Ind. App. May 19, 2008). For purposes of this appeal, the following facts from the bankruptcy court's entry will suffice. Debtor Garoutte was the president of Hawkeye Charter Service. Marc Shea was one of Hawkeye's customers, and Shea told Garoutte that he wanted to purchase an aircraft. Garoutte tried to find an aircraft for Shea to purchase, and he eventually discovered that Damax wanted to sell an aircraft. Garoutte signed a sales agreement with Damax. At the time the parties signed the sales agreement, Hawkeye actually had possession of the aircraft for purposes of inspection. The agreement provided that Hawkeye would return the aircraft to Damax in pre-purchase condition if the transaction was not completed. Shea later told Garoutte that he had secured financing for substantial repairs that the aircraft required. Shea (who did not yet own the aircraft) instructed Garoutte to begin the repairs. Garoutte arranged for the repairs to begin, which resulted in the aircraft being disassembled. But Shea's financing for the purchase later fell through, and Damax then demanded the return of its aircraft in airworthy condition. Neither Garoutte nor Hawkeye returned the aircraft to the owner, Damax.

Damax then filed a civil suit against Garoutte, Hawkeye, and others in Elkhart Superior Court. The state court entered a judgment in favor of Damax and against Garoutte, finding that Garoutte committed criminal conversion in

violation of Indiana Code § 35-43-4-3. Relying on the Indiana statute authorizing treble damages for victims of many crimes, see Ind. Code § 34-24-3-1, the court entered judgment against Garoutte and in favor of Damax for treble damages, $2,802,734.80. The Indiana Court of Appeals affirmed that judgment, which is now final. The Court of Appeals affirmed the trial court because it found that the evidence showed that Garoutte was "aware that [he was] possessing Damax's Aircraft without Damax's consent." *Hawkeye*, 2008 WL 2080947, at *15. But the court found the case "troubling": "This seems to have been a situation in which one party set certain events into motion based upon representations that eventually proved untrustworthy, and by the time the realization(s) hit, it was too late." *Id.* The court said that although the facts establish that Garoutte committed criminal conversion, "they read much more like a complex contractual dispute or tortious conversion (which lacks both the mens rea element and the accompanying treble damages)." *Id.* at *16. Nevertheless, the state court judgment for criminal conversion and treble damages stands as final.

Garoutte filed for Chapter 7 bankruptcy protection. Damax sought a declaration that the debt under the state court judgment against Garoutte is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6), which provides that an individual may not obtain a discharge for a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."[1] The bankruptcy

---

[1] Damax also invoked § 523(a)(2)(A), which provides that an individual debtor may not obtain a discharge for a debt for money, property or other assets to the
(continued...)

-3-

court held that Damax could use the state court judgment to preclude Garoutte from challenging the non-dischargeability of the debt. The bankruptcy court relied on the doctrine of collateral estoppel. Garoutte appeals to this court.

*Discussion*

The court has jurisdiction over Garoutte's appeal from the final decision of the United States Bankruptcy Court of this district pursuant to 28 U.S.C. § 158(a).[2] The bankruptcy court's grant of summary judgment is reviewed *de novo*. *In re Midway Airlines, Inc.*, 383 F.3d 663, 668 (7th Cir. 2004). In reviewing Garoutte's appeal from the bankruptcy court's entry of summary judgment, the court must construe all facts and draw all reasonable inferences in favor of Garoutte. *Hoseman v. Weinschneider*, 322 F.3d 468, 473 (7th Cir. 2003).

---

[1](…continued)
extent obtained by false pretenses, a false representation, or actual fraud. The bankruptcy court addressed only § 523(a)(6), and the parties have not discussed § 523(a)(2)(A) in this appeal. This court addresses only § 523(a)(6).

[2]The court does not discuss Damax's argument that Garoutte failed to comply with Local Bankruptcy Rule 56.1. The bankruptcy court decided this case on collateral estoppel grounds, and the court confines its review to that issue.

-4-

I.  *Collateral Estoppel in Bankruptcy Discharge Proceedings*

"[T]he doctrine of collateral estoppel applies in bankruptcy discharge exception proceedings." *Meyer v. Rigdon*, 36 F.3d 1375, 1378-79 (7th Cir. 1994); see *Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991). The effect of a state court judgment in the bankruptcy proceedings is "determined by the law of the jurisdiction that rendered the judgment." *In re Catt*, 368 F.3d 789, 790-91 (7th Cir. 2004), applying 28 U.S.C. § 1738.

Under Indiana law, the doctrine of collateral estoppel or issue preclusion applies to bar later litigation of a fact or issue if that fact or issue was necessarily decided in an earlier lawsuit. *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 704 (Ind. App. 2005). For an Indiana judgment to preclude further litigation of an issue, there are three requirements: "(1) a final judgment on the merits in a court of competent jurisdiction, (2) identity of issues, and (3) the party to be estopped was a party or the privity of a party in the prior action." *Sims v. Scopelitis*, 797 N.E.2d 348, 351 (Ind. App. 2003). Indiana courts also consider "whether the party against whom the prior judgment is asserted had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of issue preclusion." *Id.*

II.     *Criminal Conversion Judgment and the Non-dischargeability Standard*

The dispute in this case is over the "identity of issues" prong of the Indiana collateral estoppel standard.  The question is whether the state court determination that Garoutte committed criminal conversion in violation of Indiana Code § 35-43-4-3 is the same as a determination that Garoutte's debt arising from the judgment is non-dischargeable under 11 U.S.C. § 523(a)(6), which provides that an individual's debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is not dischargeable in bankruptcy. The relevant subsection of § 35-43-4-3 states:  "A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion . . . ." Ind. Code § 35-43-4-3(a).  Garoutte argues that the two determinations are different.

A.     *The Meaning of the Criminal Conversion Judgment*

In the state court case, the Indiana Court of Appeals explained the meaning of "knowingly" and "intentionally" in the criminal conversion statute.  The applicable standards are:

> "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so."  Ind. Code § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

-6-

*Hawkeye Charter Serv., Inc. v. Damax, Inc.*, 2008 WL 2080947, at *13 (Ind. App. May 19, 2008). The Court of Appeals said that Garoutte was "aware that [he was] possessing Damax's Aircraft without Damax's consent . . . ." *Id.* at *15.

B.  *Requirements for Non-dischargeability under § 523(a)(6)*

The Seventh Circuit and the Supreme Court have addressed the meaning of "willful and malicious injury" several times. The Seventh Circuit has said that "willful means deliberate or intentional . . . and malicious means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994), quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986). The Supreme Court's most recent decision discussing the meaning of the phrase came after *Thirtyacre*. In that case, *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the Kawaauhaus obtained a medical malpractice judgment against Dr. Geiger. Dr. Geiger petitioned for bankruptcy, and the Kawaauhaus requested that the bankruptcy court determine the medical malpractice debt to be non-dischargeable under § 523(a)(6). The Court held that the debt was dischargeable because the Kawaauhaus had shown only negligent or reckless conduct. *Id.* at 64. The Court said that a debt is non-dischargeable only if the debtor intended the injury, not merely the act that caused the injury. *Id.* at 61.[3] The Court said that § 523 (a)(6)

---

[3]*Kawaauhau* is not consistent with the comment in *Thirtyacre* that § 523(a)(6) does not require the debtor to intend the consequences of his action. See *Thirtyacre*, 36 F.3d at 700-01.

"triggers in the lawyer's mind the category 'intentional torts,'" which "generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" *Id.* at 61-62, quoting Restatement (Second) of Torts § 8A, cmt. a, p. 15 (1964); accord, *In re Gulevsky*, 362 F.3d 961, 964 (7th Cir. 2004) (Section 523(a)(6) "does require proof that the injury was intended").

An earlier Supreme Court case, *McIntyre v. Kavanaugh*, 242 U.S. 138 (1916), explained the meaning of the term "injury" in a case with facts similar to this case. *McIntyre* was decided under a prior version of the bankruptcy statute, but the standard for non-dischargeability ("willful and malicious injury") was the same, and *Kawaauhau* cited *McIntyre* approvingly. In *McIntyre*, the debtor sold Kavanaugh's stocks without Kavanaugh's permission. The Court held that the debt caused by the sale of the stock was non-dischargeable and said that "to deprive another of his property forever by deliberately disposing of it without semblance of authority is certainly an injury . . . ." *Id.* at 141.

Considering *Thirtyacre*, *Kawaauhau*, and *McIntyre* together, the court believes that the "willful and malicious injury" standard is met in the criminal conversion context when the debtor deliberately or intentionally deprives another of his property in conscious disregard of his duty to return the property or without

-8-

just cause or excuse. The debtor does not need to intend that the creditor be harmed financially.[4]

### C. *The Criminal Conversion Judgment against Garoutte*

There is a temptation in this case to generalize and conclude that any intentional tort, or even any intentional crime, meets the "willful and malicious" standard. That would make the law simpler, but that is not what the bankruptcy statute requires. Courts applying collateral estoppel in bankruptcy proceedings must look beyond the label "intentional tort" and compare the tort judgment in question with the "willful and malicious" standard. See *In re Schlessinger*, 208 Fed. Appx. 131, 134 (3d Cir. 2006) ("Not all intentional torts are willful and malicious."); see also *In re Gulevsky*, 362 F.3d at 963 (section 523(a)(6) "makes *many* intentional torts nondischargeable") (emphasis added). Courts must also keep in mind "the 'well-known' guide that exceptions to discharge 'should be confined to those plainly expressed.'" *Kawaauhau*, 523 U.S. at 62, quoting *Gleason v. Thaw*, 236 U.S. 558, 562 (1915).

The Indiana judgment that Garoutte committed criminal conversion is not necessarily the same as a determination that Garoutte willfully and maliciously

---

[4]The law often equates malice with ill will or a similar desire to inflict harm on a person. However, the Seventh Circuit and other federal courts consistently have refused to interpret § 523(a)(6)'s "malicious" requirement in this way in conversion cases.

injured Damax or its property.[5] The Indiana criminal conversion statute requires only that the person committing conversion "knowingly *or* intentionally exert[ ] unauthorized control" over another's property. Ind. Code § 35-43-4-3(a) (emphasis added). The Court of Appeals did not state whether the criminal conversion judgment relied on "knowingly" or "intentionally," but it did state that Garoutte was "aware that [he was] possessing Damax's Aircraft without Damax's consent," which was sufficient to satisfy at least the "knowingly" standard. See *Hawkeye*, 2008 WL 2080947, at *15.[6] The Court of Appeals indicated that Garoutte may have had an excuse for not returning the aircraft to Damax: when Shea's financing fell through and he stopped paying for the repairs, Garoutte and Hawkeye could not afford to reassemble the aircraft and return it to Damax.

At the summary judgment stage, the court must construe the record in Garoutte's favor. Accord, *Town of Flora v. Indiana Serv. Corp.*, 53 N.E.2d 161, 163 (Ind. 1944) ("where a judgment may have been based upon either or any of two or

---

[5]Judge Barker reached the opposite conclusion in *Lehman's Inc. of Anderson v. Hittle*, 163 B.R. 814 (S.D. Ind. 1994), holding that an Indiana judgment for criminal conversion required a finding that the debt was not dischargeable in bankruptcy. Based on the more recent guidance from the Supreme Court and the Seventh Circuit, the court respectfully disagrees with the statement in *Hittle* that "the fact that criminal conversion requires a mens rea of knowing or intentional means that the 'willful' prong" of § 523(a)(6) is satisfied. *Id.* at 817. Judge Barker noted in 1994 that there was some confusion in case law about the meaning of "malicious." *Id.* Since *Hittle*, the Supreme Court decided *Kawaauhau*, which narrowed the meaning of "willful and malicious" injury. See 523 U.S. at 61 (wrongdoer must have intended the injury).

[6]The Elkhart Superior Court's opinion granting summary judgment for Damax can be found in the appellate record. Dkt. No. 11, Part 10, Ex. 2.

more distinct facts, a party desiring to plead the judgment as an estoppel by verdict or finding upon the particular fact involved in a subsequent suit must show that it went upon that fact, or else the question will be open to a new contention"). The criminal conversion determination could have relied upon the "knowingly" prong of criminal conversion, which requires only that the person committing conversion be "aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). A judgment that Garoutte was aware that there was a high probability that he was converting Damax's property is not the same as a judgment that he willfully converted Damax's property, *i.e.*, that he converted it deliberately or intentionally. The difference between "knowingly" and "intentionally" may be subtle, but it exists and might even be decisive in this case. Additionally, the Indiana Court of Appeals suggested that Garoutte had an excuse for not returning the aircraft to Damax, in which case the conversion might not have been intentional or malicious, *i.e.*, done "in conscious disregard of one's duties or without just cause or excuse." See *Thirtyacre*, 36 F.3d at 700. The possible excuse was not enough to prevent a criminal conversion judgment, which could be supported by only knowing conduct, but the excuse might be enough to prevent a non-dischargeability determination.

Adding to the ambiguity here is the extent of the damages, which might well have been far greater than anything Garoutte actually anticipated. It is not at all clear that Garoutte intended to deprive Damax of essentially all value of the aircraft. But by the time the Shea purchase fell apart, the aircraft was already

disassembled and could not be repaired for a cost that Garoutte himself could afford.  It is easy to conclude that Garoutte exercised poor judgment and painted himself into a corner by counting on Shea to come through with the financing, but the consequences of the early repair work turned out to be much more serious than Garoutte might have expected or intended.

Construed in Garoutte's favor, the record does not support the bankruptcy court's decision that the Indiana judgment that Garoutte committed criminal conversion is identical to a determination that he willfully and maliciously injured Damax or its property.  The actual facts might well support that conclusion in the end, but the issue should not be resolved on summary judgment as a matter of law based on the state court judgment.  In cases such as this where the state court judgment does not indicate conclusively that the "willful and malicious" standard is met, evidentiary hearings are appropriate. Cf. *Thirtyacre*, 36 F.3d 697 (affirming bankruptcy court after bankruptcy court held an evidentiary hearing to find that state court default judgment was non-dischargeable).

*Conclusion*

Garoutte's motion to strike, Dkt. No. 33, is granted.[7] The decision of the bankruptcy court granting Damax's motion for summary judgment is vacated. The case is remanded to the bankruptcy court for further proceedings consistent with this entry.

So ordered.

Date:  March 3, 2009

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Jeffrey Eicher
jeffeicher@aol.com

Nick Cirignano
ZIEMER STAYMAN WEITZEL & SHOULDERS, LLP
ncirignano@zsws.com

Robert Burkart
ZIEMER STAYMAN WEITZEL & SHOULDERS, LLP
rburkart@zsws.com

---

[7] See Dkt. No. 31 (order denying Damax's motion for leave to file surreply).